## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **NANETTE COVERDALE** | ) | **CASE NO. 1:03CV1815** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **ACORDIA OF OHIO, LLC, ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendants**. | ) | |
| | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court upon the Motion for Summary Judgment of Defendants, Acordia of Ohio, LLC, Keith Burkhardt, Katherine (Kary) Kandra, Thomas Jenkins, and Howard Danziger. For the reasons that follow, the motion for summary judgment is granted.

### I. FACTUAL BACKGROUND

Since approximately 1979, Plaintiff, Nanette Coverdale ("Coverdale") worked as an account manager for Defendant Acordia of Ohio, LLC ("Acordia"), an insurance brokerage firm. Account managers work as a team with the producers. Producers generate business, structure relationships between clients and potential underwriters, and retain overall responsibility for

guaranteeing the clients' satisfaction.  Coverdale's experience was in the commercial lines division of the Cleveland property and casualty department, focusing on commercial insurance policies for larger businesses and organizations. Coverdale worked primarily on the accounts of Thomas Jenkins.  When Jenkins' accounts were transferred in the fall of 2000 into the newly-created unit called TIRU (Technical International Risk Unit), Coverdale followed and became a member of that unit.

In May of 2002, Coverdale took a week-long vacation.  At that point in time, Acordia allegedly learned that Coverdale had failed to perform some required data entry functions.  When Jenkins confronted her about it on her return, Coverdale explained that she was very busy. (Coverdale depo. at 119).

In July of 2002, Coverdale received her performance review.  Jenkins rated her low with regard to "adaptability to change" and she commented that she wanted to "grow in [her] current role" and "take on additional responsibilities" beyond the required mundane tasks.  Despite her desire to move up and earn more money, Coverdale told Jenkins that she did not want to be a producer. (Coverdale depo. at 100-101).

Between the July performance review and early October, other errors came to light.  In July or August, a social services client learned, upon its own investigation, that it had been misinformed as to the scope of its coverage.  That is, when Coverdale prepared a written proposal for the client, she omitted AIDS from the list of exclusions.  The producer was embarrassed by the mistake; and shortly thereafter, the client terminated its relationship with Acordia.  Coverdale admits the "inadvertent oversight"; but asserts that it did not merit the discharge of a long-term, otherwise

impeccable employee.

Apparently, on one occasion, Coverdale took more than six weeks to issue a refund to a client who had overpaid Acordia. She admits the delay, saying the client suffered no adverse consequences, and explaining that it resulted from prioritizing her heavy workload.

In August of 2002, Coverdale missed a cancellation notice for a major, coal-mining client. Compounding that, the cancellation notice was due to Coverdale's own accounting mistake. Coverdale admits that the notice was missed, but explained it was due to "too many things to do and not enough time."

Acordia also points out that Coverdale took too much time to review at least two policies for accuracy and deficiencies. Also, she failed to timely market two policies ninety days before the renewal date. Admitting the errors, Coverdale contends again that she was overworked.

On October 8, 2002, Acordia issued a written warning. Coverdale responded by admitting her shortcomings and explaining that she continued to be overworked. Coverdale was provided the services of an administrative assistant, as well as a time management system, allowing her an uninterrupted period of time each day to catch up on her work. Yet, Plaintiff acknowledges that she seldom availed herself of the assistant's help and that she did not complete the paperwork Jenkins would use to manage her job flow. (Coverdale depo. at 147 and 176).

One of the firm's newest clients was Old World Industries and Coverdale was asked to prepare "broker of record" letters to the carriers insuring Old World's Texas chemical manufacturing plant. A "broker of record" letter notifies a carrier that the insured is changing brokers in the middle of a policy year. In this particular instance, there were at least ten carriers and

four separate policies.  Coverdale sent only one letter, despite specific instructions from Jenkins.

Her actions jeopardized the Old World account.  Jenkins determined that he could no longer have

Coverdale working on his accounts.

Coverdale was placed on administrative leave for the remainder of October 17, 2002.  On

October 21, 2002, Plaintiff's employment was terminated.

Coverdale testifies that Thomas Jenkins told her at her performance review that "we need

younger people" and that "she do[es] not embrace change."  She also points out that a thirty-one

year old woman was hired as an account manager just a month after her termination.  Acordia

maintains, rather, that her work was initially redistributed.  Admittedly, a thirty-one year old and a

forty-nine year old were hired in after her termination.  Nevertheless, Coverdale, at age fifty-three,

fell in the middle of the age range for account managers.  At the time that she left their employ, there

were twelve account managers in Cleveland.  Five were older than Coverdale and seven of them

were over the age of fifty.  All five of the account managers older than Coverdale are still actively

employed as account managers with Acordia.

On August 28, 2003, Nanette Coverdale brought suit for age discrimination in violation of

the Age Discrimination in Employment Act ("ADEA") and for sex discrimination in violation of Title

VII of the Civil Rights Act of 1964.  Defendants have jointly moved for summary judgment in their

favor.

## II. LAW AND ANALYSIS

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

-4-

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  A fact is not material unless it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An opponent of a motion for summary judgment may not rely on the mere allegations of the complaint, but must set forth specific facts showing a genuine issue for trial. *Id.*  When no reasonable jury could return a verdict for the non-moving party, no genuine issue exists for trial. *Id.*

Preliminarily, the Court notes that Plaintiff fails to provide any evidence of sex discrimination outside of the allegations in her complaint and fails to refute any of the arguments raised in Defendants' Motion for Summary Judgment with regard to that claim.  Therefore, Plaintiff is deemed to have abandoned the sex discrimination claim and Defendants are entitled to judgment in their favor.

As a plaintiff claiming age discrimination under the ADEA, Nanette Coverdale bears the initial burden of establishing a prima facie case and demonstrating that (1) she was a member of a protected class; (2) that she suffered an adverse employment action; and (3) that she was qualified for the position and was replaced by a younger person. *See Manzer v. Diamond Shamrock Chemicals Company*, 29 F. 3d 1078, 1081 (6th Cir. 1994) (citing *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  The parties agree that Coverdale is a member of a protected class as an employee over the age of 40.  Indisputably, her termination was an adverse employment action.  There is an issue, nonetheless, of whether or not Coverdale was replaced. Defendants insist

that her work was redistributed and that other hires were remote in time to her date of termination.

Viewing the evidence most strongly in favor of Plaintiff, the Court finds that she has demonstrated a

prima facie case of age discrimination.

Now, the burden shifts, and the employer Defendants must establish "some legitimate non-

discriminatory reason for the plaintiff's discharge." *Cooley v. Carmike Cinemas*, 25 F. 3d 1325,

1329 (6th Cir. 1994); *see also, Phelps v. Yale Security*, 986 F. 2d 1020, 1024 (6th Cir. 1993).

In an industry which demands accuracy and attention to detail, Defendants identify numerous

incidences in the year 2002 where Coverdale fell below the standards required of a brokerage

account manager.  Her work was, at times, slow, unreasonably delayed, and even inaccurate.

Clients expressed their dissatisfaction to the producers in the TIRU unit and one client withdrew its

business all together.  Acordia conducted an employee performance review.  The problems and

errors were raised in a written warning; and accommodations were offered by way of a time

management scheme and provision for an administrative assistant. Ultimately, when client's accounts

continued to be jeopardized, the decision to terminate Coverdale was made.  The Defendants have

articulated legitimate, non-discriminatory reasons for the adverse employment action.

Plaintiff now must prove by a preponderance of the evidence that the employer's reasons

had no basis in fact; did not actually motivate Plaintiff's discharge; or were insufficient to motivate

her termination.  *Manzer, supra* at 1084.  She must prove that age was a "determining factor" or

that, but for her age, she would not have been terminated.  *Phelps v. Yale Sec., Inc.*, 986 F. 2d

1020, 1023 (6th Cir.), cert. denied, 114 S.Ct. 175 (1993)  Absent direct evidence, she needs to

provide circumstantial evidence sufficient to raise an inference of an "invidious intent" behind her

termination. *Manzer, supra* at 1081.

Coverdale admits to nearly all of the errors identified by her employer; although, she either excuses them because she claimed to be overworked or minimizes their importance.

Coverdale does not meet her burden of proffering evidence that, but for her age, she would not have been fired. She asks the Court to treat the comment by Thomas Jenkins that he wanted employees with no prior insurance experience as an affirmative motivation to hire younger employees. Jenkins counters that he meant to bring in people with no preconceived notions and that he recognized a need for more employees in the TIRU unit. Even if the Court were to view his comments as an intention to replace Coverdale with someone substantially younger, Coverdale still cannot prevail. The alleged comment was made in June of 2002 – too remote in time to demonstrate an age motivation for discharge. In addition, Jenkins was not the decision-maker as to hiring and firing. His comments are not sufficient to establish the employer's animus. *Smith v. Leggett Wire Co.*, 220 F. 3d 752 at 759 (6th Cir. 2000).

It is irrelevant whether the Court believes that Plaintiff's job performance justified her termination after over twenty years of service with Acordia. Plaintiff's burden of showing pretext cannot be based on personal beliefs. Filing a discrimination lawsuit does not grant the fired employee (nor the Court as trier of fact) the right to question the employer's legitimate business judgment. *McDonald v. Union Camp Corp*., 898 F. 2d 1155 at 1160 (6th Cir. 1988). *See also, Brocklehurst v. PPG Indus*., 123 F. 3d 890, 898 (6th Cir. 1997).

Therefore, this Court concludes that Coverdale has failed to show pretext, that Acordia has demonstrated legitimate, non-discriminatory reasons for discharging Coverdale, and that summary

judgment is appropriate on her age discrimination claim.

## III.  CONCLUSION

Viewing all of the evidence together and in a light most favorable to the Plaintiff, the Court holds that Nanette Coverdale has not offered sufficient evidence to permit a reasonable jury to find that Acordia discriminated against her on the basis of her gender in violation of  Title VII, nor on the basis of age in violation of the ADEA.  Defendants' Motion for Summary Judgment is granted.

**DATE**:   5/10/05

**IT IS SO ORDERED**.


 /s/ Christopher A. Boyko                              
**CHRISTOPHER A. BOYKO**
**United States District Judge**
(Signed original on file)